IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACERA SURGICAL, INC, RETECTIX, LLC, and WASHINGTON UNIVERSITY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. _____ |
| NANOFIBER SOLUTIONS, LLC, PARAGEN TECHNOLOGIES LLC, ATREON ORTHOPEDICS LLC, and RENOVODERM LLC, | ) ) ) ) ) | **DEMAND FOR JURY TRIAL** |
| Defendants. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs ACERA SURGICAL, INC ("Acera"), RETECTIX, LLC ("Retectix") and WASHINGTON UNIVERSITY ("WashU") (Collectively, "Plaintiffs") hereby complain of Defendants NANOFIBER SOLUTIONS, LLC, PARAGEN TECHNOLOGIES LLC, RENOVODERM LLC, and ATREON ORTHOPEDICS LLC (collectively, "Defendants") and alleges as follows:

## PARTIES

1.      Plaintiff Acera is a corporation incorporated under the laws of Delaware and has its principal place of business at 10880 Baur Blvd., St. Louis, Missouri 63132.

2.      Acera is a St. Louis based medical device company specializing in the development of innovative solutions for assisting wound healing.  Much of their work is the product of the pioneering research and development of Dr. Matthew MacEwan, Acera's Chief Technology Officer.  In 2008, while an MD/Ph.D. student at WashU, Dr. MacEwan began investigating the use of polymer nanofibers and their potential use in the medical field, ultimately leading to the founding of Acera.  Following successful product tests, Acera developed Cerafix® Dura Substitute,

a nanofiber dural repair matrix and received FDA clearance for Cerafix® in 2016.  Acera also offers a product called Restrata® Wound Matrix, a fully resorbable nanofiber soft-tissue repair.  Acera's products are based on the groundbreaking nanofiber technology Dr. MacEwan and his colleagues developed and brought to market.  Acera's technology enables the engineering of matrices closely resembling the structure and architecture of the native human extracellular matrix.  The nanofiber matrix is engineered from intricately designed fibers to create a fully resorbable regenerative scaffold.  Native cells rapidly migrate into the scaffold, and then proliferate and differentiate to form new tissue.  Gradual and defined resorption of the nanofiber scaffold is designed to occur at a similar rate to cellular ingrowth and new tissue formation.  As the scaffold resorbs, the porosity of the matrix gradually increases to support continued tissue integration and neovascularization, while eliciting a minimal inflammatory response.

3.     Plaintiff Retectix is an LLC formed under the laws of Missouri and located in St. Louis, MO.  Dr. Matthew MacEwan is the Founder and President of Retectix.

4.     Plaintiff WashU is a corporation established by special act of the Missouri General Assembly approved February 22, 1853 and acts amendatory thereto, having its principal place of business at 1 Brookings Dr., St. Louis, MO 63130.

5.     WashU is a world-renowned research institution located St. Louis, Missouri.  In addition to educating tens of thousands of students each year, WashU also funds nearly a billion dollars of research into numerous cutting edge and innovative fields.  The developments of WashU research programs have led to breakthroughs in the areas of environmental and energy research, medical devices, and agriculture.  To support such endeavors, WashU maintains a robust patent portfolio.

6.     Upon information and belief, Defendant Nanofiber Solutions, LLC ("Nanofiber") is a Delaware corporation having its principal place of business at 4389 Weaver Court North, Hilliard, Ohio 43026.  Nanofiber represents that one of the products at issue—the Phoenix Wound Matrix—is a Nanofiber product.  Nanofiber is the listed applicant for the 510(k) premarket notification submission to the FDA for the Phoenix Wound Matrix, which is marketed as

RenovoDerm's product, and Nanofiber's logo and name are listed on the packaging for RenovoDerm's Phoenix Wound Matrix.

7.      Upon information and belief, Defendant Paragen Technologies LLC ("Paragen") is a Delaware corporation having its principal place of business at 1330 Kinnear Rd., Suite 100, Columbus, OH 43212.  Paragen represents that scaffolds comprised of nanofibers (such as that utilized by RenovoDerm's Phoenix Wound Matrix and Atreon's Rotium) are "Our Technology." https://www.paragentechnologies.com/.      Additionally, while incorporated separately, on information and belief, Paragen is controlled and directed by Nanofiber.

8.      Upon information and belief, Defendant RenovoDerm LLC ("RenovoDerm") is a Delaware corporation having its principal place of business at 1330 Kinnear Rd., Suite 100, Columbus, Ohio 43212.  On information and belief, although RenovoDerm is incorporated separately, it is controlled and directed by Nanofiber and Paragen.

9.      Upon information and belief, Defendant Atreon Orthopedics LLC ("Atreon") is a Delaware corporation having its Principal place of business at 1330 Kinnear Rd. Suite 200, Columbus, OH 43212.  On information and belief, although Atreon is incorporated separately, it is controlled and directed by Nanofiber and Paragen.

10.      On information and belief, Nanofiber publicly represents and states that Paragen, RenovoDerm, and Atreon are subsidiaries of Nanofiber.  Paragen, RenovoDerm, and Atreon publicly state that they are controlled by Nanofiber.  RenovoDerm's website states that Nanofiber is "the technical parent company" of RenovoDerm. RenovoDerm's website's "about-us" page contains no information on RenovoDerm but instead provides information on Nanofiber. Paragen's, RenovoDerm's, and Atreon's websites also state they are "[c]reated in partnership with" Nanofiber.  The contact entity listed on RenovoDerm's Registration of Foreign For-Profit LLC with the Secretary of State of Ohio is Paragen.

11.      On information and belief Nanofiber, Paragen, RenovoDerm, and Atreon identify the same individuals as making up their leadership teams.  All four entities identify Ross Kayuha as their Chief Executive Officer.  All four entities identify Ronald Bracken as their Chief Operating

Officer.  All four entities identify Dr. Jed Johnson as their Chief Technology Officer.  Thus, on information and belief, the decision-making apparatus of all three companies is identical. Moreover, on information and belief, the employees responsible for the development, sale, use and commercialization of the Phoenix Wound Matrix and other nanofiber scaffold products report to the leadership team of Nanofiber.

12.     On information and belief, Paragen has publicly stated that it has raised funding to support the commercialization of RenovoDerm's product, the Phoenix Wound Matrix. https://www.prnewswire.com/news-releases/paragen-technologies-closes-3m-bridge-funding-round-300757376.html.

13.     On information and belief, publicity for the Defendants is also often cross-branded. Posters and presentations for RenovoDerm's products often include Nanofiber or Paragen branding as well.  Paragen also regularly promotes the activities of both RenovoDerm and Atreon on its website and has put out press releases on behalf of RenovoDerm and Atreon. https://www.prnewswire.com/news-releases/atreon-orthopedics-received-fda-clearance-for-rotator-cuff-regeneration-product-300814430.html; https://www.paragentechnologies.com/news

14.     With specific respect to RenovoDerm's Phoenix Wound Matrix, on information and belief, despite being advertised as RenovoDerm product the packaging includes the Nanofiber name and logo rather than RenovoDerm's.

15.     On information and belief, Atreon's product, the Rotium Bioresorbable Wick, has substantially the same structure as the Phoenix Wound Matrix and infringes Plaintiffs' patents for the reasons discussed below.

16.     On information and belief, as explained above, Defendants share a unified governance, interest, and ownership in connection with the infringing acts discussed below.  On information and belief, Defendants jointly control and direct the manufacture and sale of the accused products and their own properties without regard to corporate formalities, such that the entities providing the accused products/services are alter egos and/or in a principal agency relationship with each other.

17.     Accordingly, all of the accused infringing activities and products are directed and controlled by Nanofiber, and operated as a joint enterprise directed and controlled by Nanofiber such that the dispute set forth in this Complaint should be entirely resolved in this case by this Court.

## JURISDICTION AND VENUE

18.     Plaintiffs reallege and reincorporate by reference the allegations of set forth in Paragraphs 1-17 of this Complaint.

19.     Plaintiffs assert claims for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 et seq., more particularly, 35 U.S.C § 271.  This Court has subject matter jurisdiction of these claims under 28 U.S.C. §§ 1331 and 1338(a).

20.     On information and belief, Defendants are engaged in the business of manufacturing, selling, offering for sale, and/or importing the Phoenix Wound Matrix and other nanofiber scaffold products in the United States, including within this District, and are incorporated in this District, and accordingly are subject to personal jurisdiction in this District.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1400(b), because Defendants reside in this District.

## THE PATENTS-IN-SUIT

22.     The patents-in-suit belong to three different patent families.

23.     Together, Retectix and Acera are the exclusive licensee with the right of enforcement of U.S. Patent No. 10,617,512 entitled "Biomedical Patches with Aligned Fibers" ("the '512 patent") which the United States Patent and Trademark Office lawfully and duly issued on April 14, 2020.  WashU is the owner by assignment of the '512 patent.  Acera and Retectix are licensees of the '512 patent.  A true and correct copy of the '512 patent is attached hereto as **Exhibit 1**.  The '512 patent is a member of the first family of patents.

24.     Together, Retectix and Acera are the exclusive licensee with the right of enforcement of U.S. Patent No. 10,080,687 entitled "Biomedical Patches with Spatially Arranged

Fibers" ("the '687 patent") which the United States Patent and Trademark Office lawfully and duly issued on September 25, 2018. WashU is the owner by assignment of the '687 patent. Acera and Retectix are licensees of the '687 patent. A true and correct copy of the '687 patent is attached hereto as **Exhibit 2**. The '687 patent is a member of the second family of patents.

25.     Together, Retectix and Acera are the exclusive licensee with the right of enforcement of U.S. Patent No. 10,682,444 entitled "Biomedical Patches with Spatially Arranged Fibers" ("the '444 patent") which the United States Patent and Trademark Office lawfully and duly issued on June 16, 2020. WashU is the owner by assignment of the '444 patent. Acera and Retectix are licensees of the '444 patent. A true and correct copy of the '444 patent is attached hereto as **Exhibit 3**. The '444 patent is a member of a second family of patents.

26.     Acera is the assignee of all rights including the right of enforcement of U.S. Patent No. 10,632,228 entitled "Tissue Substitute Materials and Methods for Tissue Repair" ("the '228 patent") which the United States Patent and Trademark Office lawfully and duly issued on April 28, 2020. A true and correct copy of the '228 patent is attached hereto as **Exhibit 4**. The '228 patent is a member of a third family of patents.

## DEFENDANTS' ACTIVITES

27.     Upon information and belief, Defendants have made, used, offered to sell, and/or sold within the United States, and/or have imported into the United States, products including at least Defendants' Phoenix Wound Matrix.

## CLAIMS FOR PATENT INFRINGEMENT

## FIRST CLAIM FOR RELIEF
## (Infringement of U.S. Patent No. 10,617,512)

28.     Plaintiffs reallege and reincorporate the allegations set forth in Paragraphs 1 through 27.

29.     Upon information and belief, Defendants' products, including at least the Phoenix Wound Matrix, infringe at least Claim 1 of '512 patent under at least 35 U.S.C. § 271(a) and (b) either literally or under the doctrine of equivalents.

30.     Upon information and belief, Defendants were aware of the '512 patent and are aware of the '512 patent at least by the filing of this Complaint.

31.     Upon information and belief, Defendants have directly infringed and/or have induced others to infringe one or more of the claims of the '512 patent through manufacture, use, offering for sale, and/or selling within the United States, and/or importation into the United States, of wound matrices including the Phoenix Wound Matrix in violation of 35 U.S.C. § 271(a) and (b).

32.     For example, based upon a thorough analysis of Defendants' filings with the FDA (see IFU for the Phoenix Wound Matrix attached as **Exhibit 5** and Defendants' 510(k) disclosure attached as **Exhibit 6**) in addition to RenovoDerm's and Nanofiber's marketing materials (see RenovoDerm's website advertising the product: https://www.renovoderm.tech/Phoenix-Wound-Matrix/) Defendants' Phoenix Wound Matrix includes all of the limitations of Claim 1 of the '512 patent.

33.     Specifically, the Phoenix Wound Matrix includes a multi-laminar electrospun nanofiber scaffold for use in repairing a defect in a tissue substrate. The multi-laminar electrospun nanofiber scaffold includes a first layer formed by a first plurality of deposited electrospun polymeric fibers; and a second layer formed by a second plurality of deposited electrospun polymeric fibers, wherein the second layer is combined with the first layer. On information and belief, the multi-laminar electrospun nanofiber scaffold further includes at least a first portion of a higher density than a second portion of the multi-laminar electrospun nanofiber scaffold. On information and belief, the first portion also has a higher tensile strength than the second portion. The Phoenix Wound Matrix also is configured to degrade via hydrolysis after at least one of a predetermined time or an environmental condition and configured to be applied to the tissue substrate containing the defect. Finally, the multi-laminar electrospun nanofiber scaffold making

of the Phoenix Wound Matrix includes varying density to be sufficiently flexible to facilitate application of the multi-laminar electrospun nanofiber scaffold to uneven surfaces of the tissue substrate and to enable movement of the multi-laminar electrospun nanofiber scaffold by the tissue substrate.  These acts by Defendants constitute infringement of the '512 patent in violation of 35 U.S.C. § 271(a).

34.     On information and belief, Atreon's product, the Rotium Bioresorbable Wick, has substantially the same structure as the Phoenix Wound Matrix and infringes Plaintiffs' patents for the same reasons.

35.     Upon information and belief, Defendants have actively induced others to infringe the '512 patent by encouraging the marketing, offering for sale, selling, and use of the above nanofiber scaffolds, including the Phoenix Wound Matrix, knowing and intending that such nanofiber scaffolds would infringe the '512 patent.   These acts by Defendants constitute infringement of the '512 patent in violation of 35 U.S.C. § 271(b).

## COUNT TWO

### (Infringement of U.S. Patent No. 10,080,687)

36.     Plaintiffs reallege and reincorporate the allegations set forth in Paragraphs 1 through 35.

37.     Upon information and belief, Defendants' products, including at least the Phoenix Wound Matrix, infringe at least Claim 1 of '687 patent under at least 35 U.S.C. § 271(a) and (b) either literally or under the doctrine of equivalents.

38.     Upon information and belief, Defendants were aware of the '687 patent and are aware of the '687 patent at least by the filing of this Complaint.

39.     Upon information and belief, Defendants have directly infringed and/or have induced others to infringe one or more of the claims of the '687 patent through manufacture, use, offering for sale, and/or selling within the United States, and/or importation into the United States, of nanofiber scaffolds including the Phoenix Wound Matrix in violation of 35 U.S.C. § 271(a) and

(b).

40.     For example, based upon a thorough analysis of Defendants' filings with the FDA (see IFU for the Phoenix Wound Matrix attached as **Exhibit 5** and Defendants' 510(k) disclosure attached as **Exhibit 6**) in addition to RenovoDerm's and Nanofiber's marketing materials (see RenovoDerm's website advertising the product: https://www.renovoderm.tech/Phoenix-Wound-Matrix/) Defendants' Phoenix Wound Matrix includes all of the limitations of Claim 1 of the '687 patent.

41.     Specifically, Defendants' Phoenix Wound Matrix includes a structure for repairing a defect in a substrate.  On information and belief, the structure includes a first layer formed by a plurality of polymeric fibers and a second layer formed by a second plurality of polymeric fibers.  On information and belief, the second layer is coupled to the first layer using a first coupling process.  On information and belief, the second layer of the structure has a plurality of densities formed by the second plurality of polymeric fibers.  The first and second layers of the structure are configured to separate after a predetermined time and/or environmental condition arises.  Finally, the structure is configured to be applied to the substrate containing the defect.  These acts by Defendants constitute infringement of the '687 patent in violation of 35 U.S.C. § 271(a).

42.     On information and belief, Atreon's product, the Rotium Bioresorbable Wick, has substantially the same structure as the Phoenix Wound Matrix and infringes Plaintiffs' patents for the same reasons.

43.     Upon information and belief, Defendants have actively induced others to infringe the '687 patent by encouraging the marketing, offering for sale, selling, and use of the above nanofiber scaffolds, including the Phoenix Wound Matrix, knowing and intending that such nanofiber scaffolds would infringe the '687 patent.   These acts by Defendants constitute infringement of the '687 patent in violation of 35 U.S.C. § 271(b).

## COUNT THREE

## (Infringement of U.S. Patent No. 10,682,444)

44.     Plaintiffs reallege and reincorporate the allegations set forth in Paragraphs 1 through 43.

45.     Upon information and belief, Defendants' products, including at least the Phoenix Wound Matrix, infringe at least Claim 1 of the '444 patent under at least 35 U.S.C. § 271(a) and (b) either literally or under the doctrine of equivalents.

46.     Upon information and belief, Defendants were aware of the '444 patent and are aware of the '444 patent at least by the filing of this Complaint.

47.     Upon information and belief, Defendants have directly infringed and/or have induced others to infringe one or more of the claims of the '444 patent through manufacture, use, offering for sale, and/or selling within the United States, and/or importation into the United States, of nanofiber scaffolds including the Phoenix Wound Matrix in violation of 35 U.S.C. § 271(a) and (b).

48.     For example, based upon a thorough analysis of Defendants' filings with the FDA (see IFU for the Phoenix Wound Matrix attached as **Exhibit 5** and Defendants' 510(k) disclosure attached as **Exhibit 6**) in addition to RenovoDerm's and Nanofiber's marketing materials (see RenovoDerm's website advertising the product: https://www.renovoderm.tech/Phoenix-Wound-Matrix/) Defendants' Phoenix Wound Matrix includes all of the limitations of Claim 1 of the '444 patent.

49.     Specifically, Defendants' Phoenix Wound Matrix includes a three-dimensional electrospun nanofiber scaffold that is used in repairing a defect in tissue substrate.  The scaffold includes a first plurality of electrospun polymeric nanofibers having a diameter of 1-3000 nanometers and second plurality of deposited electrospun polymeric nanofibers.  The second plurality of deposited electrospun polymeric nanofibers being coupled to the first plurality of electrospun polymeric nanofibers.  The second plurality of electrospun polymeric nanofibers forms one or more regions within the three-dimensional electrospun nanofiber scaffold.  On information and belief, one or more of the regions comprise a density different from one or more other regions of the three-dimensional electrospun polymeric nanofiber scaffold.  On information and belief, the

one or more regions are overlaid on a first portion of the first plurality of electrospun polymeric nanofibers and are not overlaid on a second portion of the first plurality of electrospun polymeric nanofibers.  The three-dimensional electrospun nanofiber scaffold of Defendants' Phoenix Wound Matrix is further configured to be applied to the tissue substrate that contains the defect and comprises a controlled separation rate of less than 30 days.  Within 30 days after application to the tissue substrate containing the defect the first plurality of electrospun polymeric nanofibers and the second plurality of deposited electrospun nanofibers are adapted to separate.  These acts by Defendants constitute infringement of the '444 patent in violation of 35 U.S.C. § 271(a).

50.     On information and belief, Atreon's product, the Rotium Bioresorbable Wick, has substantially the same structure as the Phoenix Wound Matrix and infringes the Plaintiffs' patents for the same reasons.

51.     Upon information and belief, Defendants have actively induced others to infringe the '444 patent by encouraging the marketing, offering for sale, selling, and use of the above nanofiber scaffolds, including the Phoenix Wound Matrix, knowing and intending that such nanofiber scaffolds would infringe the '444 patent.   These acts by Defendants constitute infringement of the '444 patent in violation of 35 U.S.C. § 271(b).


**COUNT FOUR**

**(INFRINGEMENT OF U.S. PATENT NO. 10,632,228)**

52.     Plaintiffs reallege and reincorporate the allegations set forth in Paragraphs 1 through 51.

53.     Upon information and belief, Defendants' products, including at least the Phoenix Wound Matrix, infringe at least Claim 1 of '228 patent under at least 35 U.S.C. § 271(a) and (b) either literally or under the doctrine of equivalents.

54.     Upon information and belief, Defendants were aware of the '228 patent and are aware of the '228 patent at least by the filing of this Complaint.

55.     Upon information and belief, Defendants have directly infringed and/or have

induced others to infringe one or more of the claims of the '228 patent through manufacture, use, offering for sale, and/or selling within the United States, and/or importation into the United States, of nanofiber scaffolds including the Phoenix Wound Matrix in violation of 35 U.S.C. § 271(a) and (b).

56.     For example, based upon a thorough analysis of Defendants' filings with the FDA (see IFU for the Phoenix Wound Matrix attached as **Exhibit 5** and Defendants' 510(k) disclosure attached as **Exhibit 6**) in addition to RenovoDerm's and Nanofiber's marketing materials (see RenovoDerm's website advertising the product: https://www.renovoderm.tech/Phoenix-Wound-Matrix/) Defendants' Phoenix Wound Matrix includes all of the limitations of Claim 1 of the '228 patent.

57.     Specifically, Defendants' Phoenix Wound Matrix includes a resorbable non-woven graft material consisting of a single layer.  The single layer of the non-woven graft material includes a first electrospun non-woven fiber composition made from poly (glycolic acid).  The single layer of the non-woven graft material also includes a second electrospun non-woven fiber composition made from poly (lactide-co-caprolactone).  The first and second electrospun non-woven fiber compositions comprise different polymers, and are comingled throughout the thickness of the non-woven graft material.  These acts by Defendants constitute infringement of the '228 patent in violation of 35 U.S.C. § 271(a).

58.     On information and belief, Atreon's product, the Rotium Bioresorbable Wick, has substantially the same structure as the Phoenix Wound Matrix and infringes Plaintiffs' patents for the same reasons.

59.     Upon information and belief, Defendants have actively induced others to infringe the '228 patent by encouraging the marketing, offering for sale, selling, and use of the above nanofiber scaffolds, including the Phoenix Wound Matrix, knowing and intending that such nanofiber scaffolds would infringe the '228 patent.   These acts by Defendants constitute infringement of the '228 patent in violation of 35 U.S.C. § 271(b).

## JURY DEMAND

60.    Plaintiffs demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment and seek relief as follows:

A.    A judgment that Defendants and its officers, agents, servants, employees, attorneys, and all others in active concert and/or participation with Defendants have directly infringed one or more claims of each of the '512, '444, '687, and '228  patents;

B.    A judgment that Defendants and its officers, agents, servants, employees, attorneys, and all others in active concert and/or participation with Defendants have induced infringement of one or more claims of each of the '512, '444, '687, and '228  patents;

C.    A judgment that Defendants infringement of each of the '512, '444, '687, and '228 patents has been willful;

D.    A ruling that this case is exceptional under 35 U.S.C. § 285, and an award of reasonable attorneys' fees and non-taxable costs;

E.    An injunction enjoining Defendants and their officers, agents, servants, employees, attorneys, and all others in active concert and/or participation with Defendants, from infringing any and all of the '512, '444, '687, and '228 patents through the manufacture, use, importation, offer for sale, and/or sale of infringing products, and/or any of the other acts prohibited by 35 U.S.C. § 271;

F.    An award of monetary damages compensating Plaintiffs for the infringement of the '512, '444, '687, and '228  patents by Defendants through payment of not less than a reasonable royalty on sales of infringing products by Defendants;

G.    A judgment and order requiring Defendants to pay Plaintiffs treble damages for willful infringement under 35 U.S.C. § 284;

H.    An assessment of prejudgment and post-judgment interest and costs against Defendants, together with an award of such interest and costs, pursuant to 35 U.S.C. § 284;

I.      Any and all further necessary relief as the Court may deem just and proper.


                                        /s/ Karen E. Keller
                                        Karen E. Keller (No. 4489)
                                        David M. Fry (No. 5486)
                                        Nathan R. Hoeschen (No. 6232)
                                        SHAW KELLER LLP
                                        I.M. Pei Building
                                        1105 North Market Street, 12th Floor
OF COUNSEL:                             Wilmington, DE 19801
Jonathan E. Bachand                     (302) 298-0700
Catherine Gourash                       kkeller@shawkeller.com
KNOBBE, MARTENS, OLSON                  dfry@shawkeller.com
 & BEAR, LLP                            nhoeschen@shawkeller.com
1717 Pennsylvania Avenue N.W., Suite 900  *Attorneys for Plaintiff*
Washington, DC 20006
202-640-6412

Dated: July 23, 2020